```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

KELLIANN NELSON,

        Plaintiff,    Civil No. 18-8646 (NLH/JS)

   v.    **OPINION**

WAL-MART STORES, INC.; JOHN
DOES 1-10, fictious
individual(s); and ABC
COMPANIES 1-10, fictitious
business entities,

        Defendants.

**APPEARANCES:**

MORRIS STARKMAN
LAW OFFICE OF MORRIS STARKMAN
1939 ROUTE 70 EAST
SUITE 210
CHERRY HILL, NJ 08003

   *Attorneys for Plaintiff Kelliann Nelson.*

PATRICK J. MCDONNELL
MCDONNELL & ASSOCIATES, P.C.
METROPOLITAN BUSINESS CENTER
860 FIRST AVENUE
SUITE 5B
KING OF PRUSSIA, PA 19406

GWYNETH RHIAN WILLIAMS
MCDONNELL & ASSOCIATES, P.C.
METROPOLITAN BUSINESS CENTER
860 FIRST AVENUE
SUITE 5B
KING OF PRUSSIA, PA 19406

   *On behalf of Defendant Wal-Mart Stores, Inc.*

**HILLMAN, District Judge**

This is a slip-and-fall action in which Plaintiff Kelliann Nelson ("Plaintiff") alleges that she fell while visiting a Walmart Store located in Lumberton, New Jersey.[1] Defendant Wal-Mart Stores, Inc. ("Defendant" or "Walmart") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion"). (ECF No. 12). For the reasons expressed below, Defendant's Motion will be granted.

## BACKGROUND

The Court draws its facts from the parties' statements of undisputed material fact. The Court will note any factual disputes where relevant.

On April 10, 2016, Plaintiff and her twelve-year-old granddaughter entered a Walmart store located in Lumberton, New Jersey. (ECF No 12-3 ("Def. SOMF"), ¶¶2, 34). Plaintiff headed for the girl's clothing section, which is described as being at least 100 feet from the entrance. See (ECF No. 13-2 ("Pl. Dep.") at 1T32:1-12). While in route to the clothing section, Plaintiff slipped and fell on what she describes as a wipe, brownish in color, dry, and dusty. (ECF No. 13 ("Pl. SOMF"), ¶¶5-6, 8).

---

[1] The Court will occasionally refer to the Walmart Store located in Lumberton, New Jersey as the "store[.]"

2

Plaintiff testified at her deposition that the store provided cart wipes near the entrance for customers to use in cleaning shopping carts, but Plaintiff could not say whether the wipe she slipped on was one similar to the kind provided by the store. (Def. SOMF, ¶9). Plaintiff conceded, however, that the item she slipped on could have been a baby wipe or some other type of debris. (Def. SOMF, ¶14). Plaintiff does not know how or when the alleged-wipe came to be on the floor. (Def. SOMF, ¶¶11-13; Pl. SOMF, ¶10). There were no witnesses to the incident other than, possibly, Plaintiff's granddaughter.[2] (Def. SOMF, ¶15; Pl. SOMF, ¶9).

After falling, Plaintiff rose to her feet and continued shopping. (Pl. SOMF, ¶11). Plaintiff did not report the incident to anyone before leaving the store. (Def. SOMF, ¶17).

Several hours later, Plaintiff's leg began to swell. (Pl. SOMF, ¶11). In light of the swelling, Plaintiff decided to return to the store to report the incident. (Pl. SOMF, ¶12; Def. SOMF, ¶¶17-19). Plaintiff spoke with the manager on duty and was asked to fill out an incident report. (Pl. SOMF, ¶12; Def. SOMF, ¶19). In the incident report, Plaintiff explained, in her own words, that she "was walking down the front [a]isle . . . [and] fell on floor on right knee[.]" (Def. SOMF, ¶20).

---

[2] The record contains no evidence regarding whether Plaintiff's granddaughter actually witnessed Plaintiff fall.

3

Nowhere in the incident report does Plaintiff or the manager on duty indicate that a wipe or any other object facilitated Plaintiff's fall. (Def. SOMF, ¶21; Pl. SOMF, ¶13). After completing the incident report, Plaintiff drove to the local emergency room. (Pl. SOMF, ¶14).

Walmart's surveillance cameras did not capture footage from the purported incident, and no pictures were taken due to the lapse in time between Plaintiff's reporting of the incident and the actual occurrence. (Def. SOMF, ¶¶26-27).

Plaintiff's complaint - initially filed on April 3, 2018 in the Superior Court of New Jersey, Law Division, Burlington County - was removed to this Court by Defendant on May 1, 2018. (ECF No. 1). Thereafter, Defendant filed the present Motion for Summary Judgment (ECF No. 12), which Plaintiff opposes (ECF No. 13). As such, the Motion is ripe for disposition.

## **ANALYSIS**

**A.  Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

**B.  Motion for Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine

issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa.

5

Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**C. Defendant's Motion for Summary Judgment**

Defendant advances three arguments in support of its Motion for Summary Judgment. First, Defendant argues that Plaintiff is unable to prove that a dangerous condition caused her fall. Second, Defendant argues that it neither created nor had actual notice of the allegedly dangerous condition that caused Plaintiff's injury. Third, Defendant argues it did not have constructive notice of the wipe on the floor.

Plaintiff advances a single argument in opposing Defendant's Motion. Specifically, Plaintiff argues that New Jersey's mode-of-operation rule should apply because Walmart provided disposable wipes via self-service near the store's entrance, and a jury should be able to determine if Defendant used adequate care to prevent injury from occurring due to the use of those wipes.

In its reply brief, Defendant argues that because Plaintiff cannot establish that the wipe she slipped on was one provided by Defendant, Plaintiff's reliance on the mode-of-operation doctrine fails as a matter of law.

1. <u>Negligence Standard</u>

"In New Jersey, . . . it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." <u>Jersey Cent.</u>

Power & Light Co. v. Melcar Util. Co., 59 A.3d 561, 571 (N.J. 2013); accord Lee v. Won Il Park, No. 12-7437, 2016 U.S. Dist. LEXIS 70046, 2016 WL 3041845, *3 (D.N.J. May 26, 2016).

At issue in this matter is the duty Walmart owes to its patrons. "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003) (citing Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110 (N.J. 1993); Restatement (Second) of Torts § 343 (1965)). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Id. (citing O'Shea v. K. Mart Corp., 701 A.2d 475 (N.J. Super. Ct. App. Div. 1997)).

> Ordinarily, an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident. Equitable considerations have, however, motivated [the New Jersey Supreme Court] to relieve the plaintiff of proof of that element in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents. In those circumstances, [the New Jersey Supreme Court] ha[s] accorded the plaintiff an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard.

Id. (citing Brown v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984)); accord Bozza v. Vornado, Inc., 200 A.2d 777, 779-80 (N.J. 1964).

Plaintiff claims this is a mode-of-operation case in which she need not prove actual or constructive notice.[3] Accordingly, this Court must determine whether this action warrants application of the mode-of-operation doctrine.

2. Mode-Of-Operation Doctrine

In New Jersey, the mode-of-operation doctrine generally provides that "when a substantial risk of injury is inherent in a business operator's method of doing business, the plaintiff is relieved of showing actual or constructive notice of the dangerous condition." Layden v. Target Corp., 768 Fed. Appx. 152, 157 (3d Cir. 2019) (quoting Nisivoccia, 818 A.2d at 317). "To benefit from this mode-of-operations doctrine, a plaintiff must show 'that the circumstances were such as to create the reasonable probability that the dangerous condition would occur,' including 'the nature of the business, the general

---

[3] The Court interprets Plaintiff's decision to focus exclusively on the mode-of-operation doctrine in opposing Defendant's Motion as waiving or abandoning all other arguments that she may have regarding whether Defendant had actual and constructive knowledge of the purportedly dangerous condition. The Court notes that Plaintiff has not identified or presented any evidence that would support a finding that Defendant had either actual or constructive knowledge of the wipe on the floor.

9

condition of the premises, [and] a pattern of conduct or recurring incidents.'" Id. (quoting Bozza, 200 A.2d at 780).

"[I]n all of its prior mode-of-operation cases, [the New Jersey Supreme Court] has emphasized the self-service nature of the defendant's business." Prioleau v. Kentucky Fried Chicken, Inc., 122 A.3d at 328, 337 (N.J. 2015).

> [T]he mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk. The distinction drawn by these cases is sensible and practical. When a business permits its customers to handle products and equipment, unsupervised by employees, it increases the risk that a dangerous condition will go undetected and that patrons will be injured. Thus, the mode-of-operation rule is not a general rule of premises liability, but a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer selfservice business model.

Id. at 337-38 (citations omitted).

Self-service is key: the mode of operation must be "designed to allow the patron to select and remove the merchandise from the premises without intervention from any employee of the storekeeper." Senisch v. Tractor Supply Co., 2018 U.S. Dist. LEXIS 2910, *11-14 (D.N.J. Jan. 8, 2018) (Hillman, J.) (quoting Craggan v. Ikea USA, 752 A.2d 819, 825 (N.J. Super. Ct. App. Div. 2000)).

In order to succeed under the mode-of-operation doctrine, a "plaintiff must . . . prove the dangerous condition arose from the business's self-service nature." Pasterkiewicz v. Marina Buffet, Inc., 2017 N.J. Super. Unpub. LEXIS 199, *6 (N.J. Super. Ct. App. Div. Jan. 30, 2017). "The dispositive factor is . . . whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Id. at *6-7 (citation omitted).

> [T]he rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities. . . . The dispositive factor is not the label given to a particular location, but whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred.

Prioleau, 122 A.3d at 338.

    a. <u>Plaintiff Fails To Establish That The Wipe She Slipped On Emanated From The Self-Service Portion Of The Store's Business</u>

In order to succeed under the mode-of-operation doctrine, Plaintiff must prove that the dangerous condition arose from the store's self-service nature. Pasterkiewicz, 2017 N.J. Super. Unpub. LEXIS 199, at *6. In this case, Plaintiff cannot establish that the wipe she slipped on was one provided by the store, and therefore, cannot prove that the wipe emanated from the store's self-service offerings. That alone prevents

11

Plaintiff from successfully invoking the mode-of-operation doctrine.

Plaintiff testified that the wipe she slipped on may have been one of the cart wipes provided by Walmart, or may have been something different all together. Plaintiff testified that she told the supervisor at Walmart that "there was something on the floor. . . . a wipe or something[.]" (Pl. Dep. at 1T56:1-2). Plaintiff further testified that she told the store: "I don't know if it was one of your wipes from the machine or if it was somebody had a baby wipe and they dropped it, but it was a wipe on the floor and I found it under my foot underneath me when I fell." (Pl. Dep. at 1T56:2-6). Plaintiff's testimony thwarts her invocation of the mode-of-operation doctrine; because Plaintiff cannot establish that the wipe at issue emanated from a self-service aspect of Defendant's business, Plaintiff cannot establish her initial burden under the mode-of-operation doctrine.

> b. Even If Plaintiff Could Establish The Wipe She Fell On Was Provided By The Store, Plaintiff Fails To Establish That The Circumstances Create A Reasonable Probability That A Dangerous Condition Would Occur

To prevail under the mode-of-operation doctrine, a plaintiff must show that the circumstances created a reasonable probability that a dangerous condition would occur. See Layden, 768 Fed. Appx. at 157. Plaintiff presents no evidence regarding

12

the "reasonable probability" that a dangerous condition would occur from the store's providing cart wipes for its customers' use.

At least one other court has concluded that the provision of cart wipes does not create an environment where a store "reasonably could anticipate wipes regularly would pose a hazard." Kinast v. Target Corp., No. 15-cv-01063-PHX-DLR, 2016 U.S. Dist. LEXIS 53609, 2016 WL 1593812 (D. Ariz. April 21, 2016). In Kinast, the plaintiff slipped and fell in a Target store, purportedly on a cart wipe. Id. at *2. Plaintiff argued that Target was liable under Arizona's mode-of-operation theory. While Target admitted customers sometimes dispose of wipes in carts rather than in trashcans, the plaintiff had not produced evidence about the foreseeability (past incidents of a similar kind) that could otherwise inform Target of some potential risk. See Id. at *8. Therefore, the Kinast court found that "no reasonable jury could find that Target reasonably should have anticipated dangerous conditions from cart wipes based on its mode of operation." Id.

The Court concurs with the decision in Kinast. Absent proof of reasonable foreseeability of harm or "recurring incidents" stemming from the store's provision of cart wipes, the Court finds no basis on which to permit Plaintiff's action to proceed. See Layden, 768 Fed. Appx. at 157.

## **CONCLUSION**

Based on the foregoing analysis, Defendant's Motion for Summary Judgment (ECF No. 12) will be granted. This case will be dismissed in its entirety.

An appropriate Order will be entered.


Date: October 22, 2019         s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.